Robins Kaplan LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650 784 4040
Facsimile:    650 784 4041

Epps Holloway DeLoach & Hoipkemier, LLC
Adam L. Hoipkemier *[Pro Hac Vice Application To Be Filed])*
adam@ehdhlaw.com
Kevin E. Epps *[Pro Hac Vice Application To Be Filed]*
kevin@ehdhlaw.com
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677
Telephone:    706 508 4000
Facsimile:    706 842 6750

Turke & Strauss LLP
Samuel Strauss *[Pro Hac Vice Application To Be Filed]*
sam@turkestrauss.com
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 509-4423

*Attorneys for Plaintiff and Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PETERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF TEXAS FAIR DEBT COLLECTION PRACTICES ACT, TEX. FIN. CODE § 392.303**<br><br>**CLASS ACTION** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Summary .................................................................................................................... 1

Parties ..................................................................................................................... 2

Jurisdiction ............................................................................................................. 2

Fact Allegations ...................................................................................................... 3

      A.     Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders. ......... 3

      B.     The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form. .................................................................................... 3

      C.     Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. ................................................................................ 8

      D.     Wells Fargo Did Not Provide An FHA-Approved Form To Plaintiff Before Collecting Post-Payment Interest. .......................................... 10

Class Action Allegations ...................................................................................... 13

CAUSE OF ACTION (Violation of Texas Fair Debt Collection Practices Act, Tex. Fin. Code § 392.303) .................................................................................................... 15

Relief Requested ................................................................................................... 16

**Summary**

1. Defendant Wells Fargo Bank, N.A. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the regulations governing these loans. As a result, Wells Fargo has collected tens of millions of dollars in post-payment interest from borrowers in an unlawful and unfair manner, and through this class action, Plaintiff seeks to recover restitution for those Class members injured by Wells Fargo and injunctive relief barring this wrongful conduct in the future.

2. Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan. For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3. A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans. Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by** [**FHA**] **regulations**." Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as Exhibit 1, at 2.

4. HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]." 24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5. HUD requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges. *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C).

6. Although the uniform provisions of the note, HUD handbooks, and HUD regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with a HUD-approved disclosure, Wells Fargo does not use the approved form attached to HUD Handbook 4330.1 or the "Payoff Procedure Disclosure Form" hyperlinked in HUD Handbook

4000.1.  Instead, Wells Fargo uses its own unauthorized form, which is not approved by HUD and does not fairly disclose the terms under which Wells Fargo can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.      Because Wells Fargo does not use a HUD-approved form as required by both the uniform provisions of the note, the HUD Handbooks and HUD regulations, Wells Fargo has no right to collect post-payment interest from borrowers.  Yet, Wells Fargo has unlawfully collected tens of millions of dollars in post-payment interest from Plaintiff and the class of Texan borrowers of FHA-insured loans.  Through this class action, Plaintiff seeks to recover restitution for himself and Class members.

### Parties

8.      Plaintiff Michael Peters is a citizen of Texas, residing in Montgomery, Texas.  In February 2017, Plaintiff paid off an FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

9.      Defendant Wells Fargo Bank, N.A. is a national banking association.  Wells Fargo held FHA-insured loans for Plaintiff and other Class members.  These loans have been paid off in full.

10.     Wells Fargo is headquartered in San Francisco, California.  Form 10-Q, filed May 5, 2017.

### Jurisdiction

11.     This Court has subject matter jurisdiction over this class action.  Peters is a citizen of a State different from Wells Fargo, and so are many other Class members.  *See* 28 U.S.C. § 1332 (d)(2).  And the claims of the Class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332 (d)(6).  In fact, the amount in controversy involves tens of millions of dollars.

12.     This Court has personal jurisdiction over Wells Fargo.  Among other things, Wells Fargo has its corporate headquarters in San Francisco; is registered to and does conduct business in California, holds mortgages on real property in California, has breached contracts with persons located in California, has caused injuries in California, and generally engages in substantial activity in California.

13.     This Court is also a proper venue for this action.  Wells Fargo is subject to personal jurisdiction in the Northern District of California, which "[f]or purposes of venue," means that Wells Fargo resides in this judicial district.  28 U.S.C. § 1391 (b)(1), (c).

**Fact Allegations**

**A.    Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders.**

14.    The Department of Housing and Urban Development is a department within the executive branch of the United States government.   HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.  The Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

15.    Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes.  *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.[1]  The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.  *Id.*

16.    Mortgage insurance protects lenders against losses that are caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

17.    To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.    The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form.**

18.    One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.    BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the

---

[1] Last accessed July 26, 2017.

principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

19.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues.  This makes sense because, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

20.     In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

21.     However, for nearly thirty years, the FHA maintained a policy different from the other government agencies.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

22.     This type of interest is often referred to as "post-payment" interest.  Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

23.     Although HUD permits lenders to collect post-payment interest, it has imposed strict limitations on the lender's ability to do so.  HUD prohibits lenders from collecting post-payment interest unless the lender complies with HUD regulations.  And HUD regulations require the lender to provide the borrower with a disclosure form approved by HUD.

24.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

5.      BORROWER'S RIGHT TO PREPAY

**Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**.  Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a

partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[2]

25.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

26.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

(a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
. . .
(c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
. . .
(e) If the [lender] **fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture** of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

27.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

28.     For the convenience of lenders, for mortgages insured on or after August 2, 1985 and through January 20, 2015, HUD provided an approved form as Appendix 8 (C) to the HUD

---

[2] Plaintiff's note is a fixed rate note, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6.  There is no difference in the relevant language.

Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____    Date: _____
Address: _____    Loan #: _____
_____    FHA#: _____

     This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

     This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

     The _____(mortgagee name)_____ will:

(a)    [ ]    accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)    [ ]    only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

---

     NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

     If you have any questions regarding this notice, please contact ____(name and/or department) ___at___(telephone number)___.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

    29.    As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage."  HUD Housing Handbook, Administration of

Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 2 (emphasis added).

30.     HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined.  **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

31.     In May 2016, HUD Handbook 4000.1 went into effect, and reiterates the requirement that lenders must provide borrowers with an approved disclosure as a condition to charging post-payment interest.

32.     For example, Handbook 4000.1 states that, "[w]hen notified of the Borrower's intent to prepay a Mortgage, the Mortgagee **must** send to the Borrower directly the **Payoff Disclosure** and copy of the payoff statement" and [t]he Mortgagee will forfeit any interest collected after the date of prepayment if these disclosure requirements are not met.  Section III.A.1.e.v.(C)(3) (emphasis added.)

33.     The handbook also states "this option [*i.e.*, post-payment interest] may **only** be used **if the Mortgagee has provided the Payoff Disclosure to the Borrower**."  Section III.A.1.e.v.(C)(2)(a).   The relevant sections of the Handbook 4000.1 addressing the Payoff Disclosure are attached as Exhibit 3.

34.     HUD makes a document titled "Prepayment Disclosure Statements" available on its   website:   https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_ documents.  The Payoff Disclosure is attached as Exhibit 4.

35.     HUD Handbook 4000.1 contains the hyperlinked words "Payoff Disclosure," which is linked to the Handbook's "Supplemental Documents" website, which contains a link to the page with the model form "Prepayment Disclosure Statements."

36.     Likewise, a Frequently Asked Questions page linked from and accessible through the HUD website contains the question "Is there a current Payoff Procedure Disclosure for FHA Loans?"

37.     The answer to the FAQ is: "Yes, in response to a prepayment inquiry, request for payoff, or tender of prepayment in full, **mortgagees must use the Payoff Procedure Disclosure notice** provided on   the   Single   Family   Mortgages   Model   Documents   webpage   at: https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents   The specific link is at:

portal.hud.gov/hudportal/documents/huddoc?id=SFPayoffProcDisc.pdf" (emphasis added).

38.      In sum, pursuant to the uniform provisions of the note, HUD Handbooks, and HUD regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**.  If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.     Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

39.      From August 2, 1985 through January 20, 2015, lenders including Wells Fargo have collected billions of dollars in post-payment interest.

40.      The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers.[3]  The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

41.      "HUD doesn't get the interest, lenders do.  In effect, **lenders are getting interest for money that isn't outstanding**.  This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/ (emphasis added).

42.      "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high."  Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sep. 5, 2014,

---

[3] Last accessed July 26, 2017.

https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html (emphasis added).[4]

43.     "[T]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**."  Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added).  "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

44.     Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330 (emphasis added).

45.     All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

46.     On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.'  **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**."  *Id.* at 43257 (emphasis added).

47.     On January 30, 2013, the Consumer Financial Protection Bureau ("CFPB") issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)."  *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due."  *Id*. at 6444.

48.     This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

[I]t is appropriate to designate higher interest charges for consumers based on

---

[4] Last accessed July 26, 2017

accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . . In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

49.    Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act. *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

50.    In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

51.    Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558 (a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

52.    Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive. "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.    Wells Fargo Did Not Provide A HUD-Approved Disclosure To Plaintiff Before Collecting Post-Payment Interest.**

53.    Wells Fargo was the holder of Plaintiff's loan secured by his home in Montgomery, Texas. Plaintiff's loan was insured by the FHA, and so Wells Fargo is required to comply with

the HUD Handbook and HUD regulations with respect to his loan.

54.     Pursuant to HUD regulations, Plaintiff's promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay."  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

55.     In February 2017, Plaintiff refinanced his home.  So that he could pay off his loan with Wells Fargo, Plaintiff requested that Wells Fargo provide him with a payoff statement. Wells Fargo provided a payoff statement dated January 30, 2017.  The statement is a form document, in which Wells Fargo uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Payoff Statement, From Wells Fargo, To Plaintiff, attached as Exhibit 5, at 1.

56.     The form includes the statements "TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE / SECURITY INSTRUMENT"; "Unpaid Principal Balance $ "; "Interest as of "; and "TOTAL AMOUNT DUE through  $ ."  *Id.* at 2.

57.     The statement contains the following specific numbers for Peters' loan: "Unpaid Principal Balance $123,760.18"; "**Interest as of 03-01-17 [$] 1,031.34**"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $11.00"; and "TOTAL AMOUNT DUE through 03-01-17 $ 124,970.85."  *Id.* (emphasis added).

58.     Plaintiff's interest payments were $515.67 per month.  Thus, by representing that Plaintiff owed $1,031.34 in interest, Wells Fargo charged and sought to collect interest for the entire month of February 2017, even though the loan was paid off by February 21, 2017.  *Id.*

59.     Wells Fargo has an admitted policy of charging post-payment interest on all FHA-insured loans such as Plaintiff's loan.

60.     On or about February 21, 2017, Plaintiff paid Wells Fargo $124,970.85, which includes the interest Wells Fargo represented it was owed.  And because Wells Fargo required Plaintiff to pay interest for the entire month of February 2017 – even though Plaintiff paid the full unpaid principal by February 21, 2017 – Wells Fargo collected post-payment interest.

61.     However, Wells Fargo did not first provide Plaintiff with disclosure in Appendix 8(c), the Payoff Disclosure, or any other HUD-approved form.  For one, the form used by Wells Fargo is not a HUD-approved form, nor does it include all of the essential elements of the Payoff Disclosure, and FHA or HUD approval is an **express** requirement of HUD regulations.

62.     HUD's approved forms included with its handbooks are designed to be consumer-friendly.

63.     Appendix 8(c) to HUD Handbook 4330.1 rev-1 is nearly a page long, has a capitalized title (MORTGAGE NOTICE TO MORTGAGOR (In response to prepayment inquiry, request for payoff or tender of prepayment in full), two easy-to-read, distinct paragraphs labeled (a) and (b), with options for how interest will be charged, along with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom, emphasizing the significance of the document to borrowers.

64.     Similarly, the Payoff Disclosure form appended to HUD Handbook 4000.1 is nearly a full page long, has a capitalized title (PAYOFF PROCEDURE DISCLOSURE), two easy-to-read distinct paragraphs with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom.

65.     Wells Fargo's unapproved form is nothing like Appendix 8(c) or the Payoff Disclosure form.

66.     Wells Fargo's unapproved form does not have a title relating to post-payment interest, separate paragraphs, check-boxes, or anywhere for the lender to sign; instead, Wells Fargo's form squeezes two sentences about post-payment interest into a single confusing paragraph.

67.     Moreover, the language that Wells Fargo uses is different from HUD's approved disclosures and is both misleading and confusing.  The relevant language consists of two sentences. The first sentence tells Plaintiff that "[w]e **will collect interest through the end of the month** in which we receive the payoff funds." *Id.* at 1 (emphasis added).  Because this language is unconditional, Wells Fargo wrongly tells Plaintiff that, even if payment is made on the first of the month, Wells Fargo "**will**" collect interest through the end month of that month – which both the uniform provisions of the note and FHA regulations prohibit Wells Fargo from doing.  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

68.     The second sentence further reinforces the misleading and confusing nature of the first sentence.  It tells Plaintiff that, "[t]o avoid paying an **extra month** of interest, it is to your advantage to arrange closing so the payoff funds reach us on or before the first business day of the month."  Payoff Statement, From Wells Fargo, to Plaintiff, at 1 (emphasis added).  Because this

language follows the first sentence – "[w]e will collect interest through the end of the month" – Wells Fargo wrongly tells Plaintiff that, no matter what he has to pay interest through the end of the month in which payment is received, and only addresses how to avoid payment of interest for an "**extra month**."  In other words, Wells Fargo only addresses how to avoid a second month of post-payment interest.

69.     The effect of Wells Fargo's illegal collection of post-payment interest is that Plaintiff was charged interest twice – by Wells Fargo and his new lender – for the period between the date of closing and the end of the month.

## Class Action Allegations

70.     Plaintiff asserts claims on behalf of himself and a class similarly-situated persons Federal Rule 23.

71.     Plaintiff currently proposes the following class:

Any person who had a FHA-insured loan secured by a mortgage on real property located in Texas for which (i) the Date of the Note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) as of the date the total amount due on the loan was brought to zero, Wells Fargo was the Lender, Mortgagee, or otherwise held legal title to the Note; and (iii) Wells Fargo collected interest for any period after the total amount due on the loan was brought to zero (i.e., Wells Fargo collected "post-payment interest.")

72.     Plaintiff reserves the right to revise this class definition.

73.     Plaintiff proposes certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.

74.     Plaintiff would serve as the class representative.

75.     Plaintiff satisfies the requirements of Federal Rule 23:

a.     Numerosity – The class is so numerous that joinder is impracticable.  The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes.  Plaintiff estimates that the class consists of tens of thousands of persons.

b.     Commonality – There are numerous common questions of law and fact, including but not limited to the following:

i.     Whether, before collecting post-payment interest, Wells Fargo complied with the contractual and regulatory requirements that it provide the borrowers with a HUD-approved disclosure.

ii.    Whether and when Wells Fargo knew that it failed to make required disclosures relating to post-payment interest.

iii.   Whether Wells Fargo's collection of post-payment interest not expressly authorized by the note or legally chargeable to the consumer violated the Texas Fair Debt Collection Practices Act, Section 392.303(2).

iv.    Whether Plaintiff and Texas Class members are entitled to attorney's fees under the Texas Fair Debt Collection Practices Act, Section 392.403(b).

v.     Whether Plaintiff and Class members are entitled to equitable relief and if so, the nature of the relief.

c.    <u>Typicality</u> – Plaintiff's claims are typical of the class claims.  Plaintiff's promissory note and Wells Fargo's deficient disclosure are not just typical of the rest of the class, but are identical to those of the class with respect to the relevant provisions at issue in this case.  Wells Fargo illegally sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the rest of the class.

d.    <u>Adequacy</u> – Plaintiff would adequately protect the class's interests. Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions. Indeed, Plaintiff's counsel has been designated and approved as class counsel in numerous state and federal courts, including in other post-payment interest cases.  Further, because Plaintiff challenges form payoff statements used by Wells Fargo, the interests of Plaintiff and the class are aligned.

e.    <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiff establishes that Wells Fargo's practice of collecting post-payment interest without making the approved disclosure required under the note and HUD regulations violates the TDCA, it will establish liability for all Class members, without the need for any additional proof as to liability.  Thus, common issues predominate over

individual issues.

f.     <u>Superiority</u> – A class action is superior to other available remedies.  The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action.  Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiff and other Class members to obtain redress.  Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class.  Requiring tens of thousands of Class members to individually litigate their claims over and over again in various courts would be vastly inefficient.  It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## CAUSE OF ACTION

**(Violation of Texas Fair Debt Collection Practices Act, Section 392.303)**

76.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

77.     Plaintiff is a "consumer" and Wells Fargo is a "debt collector" as defined under the Texas Fair Debt Collection Practices Act (TDCA). Section 392.001 (1) and (6).

78.     The TDCA applies to creditors seeking to collect their own debts like Wells Fargo, as well as to mortgage servicers. *See* 392.001(3).

79.     Section 392.303 of the TDCA states in part:

> In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:
>
> […]
>
> (2) **collecting or attempting to collect interest** or a charge, fee, or expense incidental to the obligation **unless the interest** or incidental charge, fee, or **expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer** . . . . (emphasis added.)

80.     Wells Fargo violated Section 392.303 of the TDCA by engaging in unfair and unconscionable means to collect post-payment interest from Plaintiff that was not expressly authorized by the note or legally chargeable to Plaintiff under 24 C.F.R. § 203.558.

81.     Post-payment interest was not expressly authorized by the note or legally chargeable to Plaintiff because Wells Fargo did not first disclose the charge and how to avoid it through providing Plaintiff with the Payoff Disclosure or other HUD-approved form.

82.     Plaintiff suffered an injury-in-fact from Wells Fargo's conduct in the form of paying interest that he was not required to pay under HUD regulations or the terms of his note.

83.     To this day, Wells Fargo has engaged and continues to engage in unfair and unconscionable debt collection practices by keeping the post-payment interest that it collected in violation of the form HUD note and federal law, and failing to inform Plaintiff and Class members of its illegal practices.

84.     As a direct and proximate cause of Wells Fargo's practices, Plaintiff and Class members have suffered actual damages in that they have paid interest that they did not owe.

85.     Under Section 392.403(b), a person who successfully maintains an action for injunctive relief or actual damages is entitled to attorney's fees reasonably related to the amount of work performed, and costs.

86.     Accordingly, Plaintiff and the Class are entitled to an award of attorney's fees and their costs under the TDCA upon the successful conclusion of this action.

## **Relief Requested**

Plaintiff asks this Court to:

a.      certify this action as a class action, including certifying Plaintiff as class representative and undersigned counsel as class counsel;

b.      grant judgment as a matter of law in favor of Plaintiff and the Class on any or all issues or, in the alternative, hold a trial to decide any disputed fact questions;

c.      award Plaintiff and the class any damages they are entitled to, including but not limited to actual damages under Section 392.403(a)(2), attorney fees under Section 392.403(b), pre-judgment interest, post-judgment interest, and costs;

d.      enjoin Wells Fargo from continuing the unlawful practices set forth here under Section 392.403(a)(a) of the TDCPA;

e.      and order any other relief as the Court may deem proper and just.

DATED:  August 1, 2017

**ROBINS KAPLAN LLP**


By:  _____*/s/ Michael F. Ram*_____
      Michael F. Ram (SBN 104805)
      Susan S. Brown (SBN 287986)

2440 West El Camino Real
Suite 100
Mountain View, CA 94040
Telephone:  650 784 4040
Facsimile:  650 784 4041
mram@robinskaplan.com
sbrown@robinskaplan.com


**EPPS, HOLLOWAY, DELOACH
& HOIPKEMIER, LLC**

Adam Hoipkemier (GABN 745811)
Kevin Epps (GABN 785511)
1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
Telephone:  706 508 4000
Facsimile:  706 842 6750
adam@ehdhlaw.com
kevin@ehdhlaw.com

(*Pro Hac Vice Applications To Be Filed*)

**TURKE & STRAUSS LLP**

Sam Strauss (WIBN 46971)
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 509 4423
Email: sam@turkestrauss.com

(*Pro Hac Vice Application To Be Filed*)


*Attorneys for Plaintiff and the Proposed Class*

EXHIBIT 1

Loan Number: █████████

# NOTE

FHA Case No.
█████████████

█████████████          █████████          GEORGIA
[Date]                 [City]             [State]

████████████████████████████████████████████
[Property Address]

## 1.  PARTIES

**"Borrower"** means each person signing at the end of this Note, and the person's successors and assigns. **"Lender"** means █████████████████████████████████ and its successors and assigns.
███████████████████████████

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of █████████████████████████████████████████████ **Dollars (U.S. $** ████████████ ), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of ████████████████████ percent ( ███████ %) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the  1st  day of each month beginning on ████████████████████████ . Any principal and interest remaining on the  1st  day of ███████████████ , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at ████████████████████████████████  ██████████████
██████████████ , or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ ████████████ . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

(Check applicable box.)

☐  Growing Equity Allonge
☐  Graduated Payment Allonge
☐  Other [specify]:

## 5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower  pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.   BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen  calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR AND 000/1000                            percent (          4.000 %) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.   WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that  must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at  a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person  who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made  in

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                    Page 3 of 3                    DocMagic *eForms* 800-649-1362
                                                                      www.docmagic.com

EXHIBIT 2

Page 1 of 29/94

4330.1 REV-5

APPENDIX 8(B)
_____

[Instructions:  Lender may use either of these options in its notice.]

       (1)      Otherwise, your prepayment will be refused until the next
                   installment due date and interest will be charged to that date.

       (2)Otherwise, you may be required to pay interest on the amount
prepaid through the end of the month.

       If you have any questions regarding this notice, please contact
_____(name and/or department)_____ at {telephone number)_____.

                                         _____
                                         Mortgagee

_____

9/94                         Page 2 of 2

4330.1 REV-5

APPENDIX 8(C)
_____

                             MORTGAGEE NOTICE TO MORTGAGOR
                    (In response to prepayment inquiry, request
                  for payoff or tender of prepayment in full)

Mortgagor: _____   Date: _____
Address: _____   Loan#: _____
          _____   FHA#:  _____

       This is in reply to your _____(date)_____ inquiry/request for payoff
figures or offer to tender an amount to prepay in full your FHA-insured
mortgage which this company is servicing.

       This notice is to advise you of the procedure which will be followed
to accomplish a full prepayment of your mortgage.

       The _____(mortgagee name) _____ will:

       (a)  [ ]  accept the full prepayment amount whenever it is paid and
               collect interest only to the date of that payment; or

       (b)  [ ]  only accept the prepayment on the first day of any month
               during the mortgage term; or accept the prepayment whenever
               tendered with interest paid to the first day of the
               month following the date prepayment is received

       (c)  [ ]  require at least 30 days prior written notice of your intent
to prepay the mortgage (for mortgagee insured prior to

August 2, 1985).  We consider that the 30-day written notice
has not yet been complied with.  NOTICE MUST BE IN WRITING.

        (d)  [ ]  consider that we have received notice of your intended
prepayment and the 30-day notice began to run on
_____(date)_____.

_____

Page 1 of 29/94

        4330.1 REV-5

        APPENDIX 8(C)

_____

        NOTE:It is to your advantage to arrange closings so that the
prepayment reaches us on or before (as close to the end of
the month as possible) the first work day of the month.

        If you have any questions regarding this notice, please contact
____(name and/or department)_____ at ___(telephone number)_____.


_____

Mortgagee

Attachment (Pay off Statement)

_____

9/94                        Page 2 of 2

EXHIBIT 3

Case 3:17-cv-04367-JST   Document 1   Filed 08/01/17   Page 28 of 41

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.  Servicing of FHA-Insured Mortgages

### (C) Prepayment Procedures

#### (1) Mortgages Closed On or After January 21, 2015

The Mortgagee must accept a prepayment on a Mortgage closed on or after January 21, 2015, at any time and in any amount. The Mortgagee must calculate the interest as of the date the prepayment is received, not as of the next Installment Due Date.

#### (2) Mortgages Closed Before January 21, 2015

##### (a) Mortgages Insured On or After August 2, 1985

The Mortgagee must accept a prepayment on a Mortgage insured on or after August 2, 1985 and closed before January 21, 2015, if the Borrower prepays the Mortgage in full on the first Day of any month in the term of the Mortgage.

If prepayment is offered on a day other than the Installment Due Date, the Mortgagee may:
- refuse to accept the prepayment until the first Day of the next month; or
- accept the prepayment and require the payment of interest to the first Day of the next month. For Prepayment in Full, this option may only be used if the Mortgagee has provided the Payoff Disclosure to the Borrower.

##### (b) Mortgages Insured Prior to August 2, 1985

###### *(i)* Definitions

Notice of Intent to Prepay refers to the advance notice that Borrowers on Mortgages insured before August 2, 1985 must provide in order to prepay their FHA-insured Mortgages in full without penalty.

The 30-Day Advance Prepayment Notice Period refers to the time requirement for the Borrower to provide advance notice to the Mortgagee for prepayment of an FHA-insured Mortgage insured prior to August 2, 1985.

###### *(ii)* Standard

The Mortgagee must accept prepayment on a Mortgage insured prior to August 2, 1985, if the Borrower:
- submits to the Mortgagee a Notice of Intent to Prepay at least 30 Days prior to the prepayment; and

Case 3:17-cv-04367-JST   Document 1   Filed 08/01/17   Page 29 of 41

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.    Servicing of FHA-Insured Mortgages

- prepays the Mortgage in full on the first Day of any month in the term of the Mortgage.

If a prepayment is offered on a day other than the Installment Due Date, the Mortgagee may:
- refuse to accept the prepayment until the first Day of the month following the expiration of the 30-Day Advance Prepayment Notice Period; or
- accept prepayment and require the payment of interest to the first Day of the month following the expiration of the 30-Day Advance Prepayment Notice Period. For Prepayment in Full, this option may only be used if the Mortgagee has provided the Payoff Disclosure to the Borrower.

### *(iii)* Borrower's Notice of Intent to Prepay

For Mortgages insured prior to August 2, 1985, the Borrower must send and the Mortgagee must receive the Borrower's Notice of Intent to Prepay at least 30 Days prior to prepayment.

If the Borrower submits a prepayment without previously sending a Borrower's Notice of Intent to Prepay, the Mortgagee may consider receipt of the prepayment as the Borrower's Notice of Intent to Prepay. The Mortgagee may choose to:
- provide a Payoff Disclosure, enabling the Mortgagee to:
  - defer acceptance of prepayment until the first Day of the month following the date prepayment is tendered; or
  - accept the prepayment and require the payment of interest to the first Day of the month following the date prepayment is tendered; or
- accept the prepayment on the date tendered, which limits the Mortgagee's collection of interest to that prepayment date.

### *(iv)* Effective Dates for Notice of Intent to Prepay

The effective date of the Notice of Intent to Prepay is the date that the Notice was received by the Mortgagee, unless the Borrower can produce documentation showing that the Notice was received earlier. The 30-Day Advance Prepayment Notice Period required for Mortgages insured prior to August 2, 1985, begins on this date of receipt.

### (c)  Installment Due Date Falls on a Non-Business Day

When the Installment Due Date falls on a non-business day, the Mortgagee must consider a Borrower's Notice of Intent to Prepay or the receipt of the

Case 3:17-cv-04367-JST   Document 1   Filed 08/01/17   Page 30 of 41

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.    Servicing of FHA-Insured Mortgages

prepayment amount for a Mortgage closed before January 21, 2015 timely if received on the next business day.

### (3) Payoff Disclosure Requirements

When notified of the Borrower's intent to prepay, the Mortgagee must send the Payoff Disclosure and copy of the payoff statement directly to the Borrower, even if the Mortgagee is dealing with an Authorized Third Party.

The Mortgagee will forfeit any interest collected after the date of prepayment if these disclosure requirements are not met.

### (D) Trustee's Fee for Satisfactions

If specifically provided for in the security instrument, the Mortgagee may charge the Borrower the amount of the trustee's fee, plus any reasonable and customary fee for payment, or for the execution of a satisfaction, release or trustee's deed when the debt is paid in full.

### (E) Recording Fees for Satisfactions

The Mortgagee may charge the Borrower a reasonable and customary fee for recording satisfactions in states where recordation is not the responsibility of the Mortgagee.

## f.  Servicing Fees and Charges

### i.  Definition

Allowable Fees and Charges are those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower.

Prohibited Fees and Charges are those costs associated with the servicing of the Mortgage that may not be charged to the Borrower.

### ii.  Standard

### (A) Reasonable and Customary Fees and Charges

The Mortgagee may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below. All fees must be:
- reasonable and customary for the local jurisdiction;
- based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
- within the maximum amount allowed by HUD.

EXHIBIT 4

**PREPAYMENT DISCLOSURE STATEMENTS**

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Insured Before August 2, 1985**

Borrower:      _____      Date: _____
Address:       _____      Loan #: _____
               _____      FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage. This notice is also to advise you of requirements you must fulfill upon the prepayment of your mortgage to prevent the accrual of any interest after the date you prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through   [date]   . (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. However, you are required to provide a written 30-day advance notice of prepayment. In order to avoid the accrual of interest on any prepayment after the date of prepayment, the prepayment must be received on the installment due date (the first day of the month). Otherwise, your prepayment will be refused until the next installment due date (the first of the month) and interest will be assessed up through that date.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Insured on or after August 2, 1985, and Closed Before January 21, 2015**

Borrower: _____     Date: _____
Address: _____     Loan #: _____
　　　　　_____     FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage. This notice is also to advise you of requirements you must fulfill upon the prepayment of your mortgage to prevent the accrual of any interest after the date you prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through__[date]___. (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. However, in order to avoid the accrual of interest on any prepayment after the date of prepayment, the prepayment must be received on the installment due date (the first day of the month). Otherwise, you may be required to pay interest on the amount pre-paid through the end of the month.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Closed on or After January 21, 2015**

Borrower:     _____     Date: _____
Address:      _____     Loan #: _____
              _____     FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through__[date]___. (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. You will only be required to pay interest up to the date the prepayment is made.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

June 2015

EXHIBIT 5



# Enterprise Fax

| | | | |
|---|---|---|---|
| To: | | From: | Danner, David S |
| Fax: | 6085094423 | Phone: | (800) 853-8516 |
| Phone: | | Date: | July 25, 2017 |

Fax Number:    866/645-0195

Re:    Payoff statement

\* Comments:

David Danner

Executive Mortgage Specialist
Customer Care and Recovery Group

Wells Fargo Home Mortgage
2850 S Price Rd Bldg E 3rd floor
Chandler, AZ 85286-7809
Tel 800-853-8516 x 1335524392 | Fax 866-645-0195

David.s.danner@wellsfargo.com

If this email was sent to you as an unsecured message, it is not intended for

NOTICE: CONFIDENTIAL AND PRIVILEGED INFORMATION -
This fax may contain confidential and privileged material for the sole use of the intended recipient(s).
Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended
recipient (or authorized to receive for the recipient), please contact the sender by telephone and destroy
all copies of this correspondence.

If you no longer wish to receive faxes from us, please contact the sender of this fax
and we will remove your fax number from our list.
Please allow us up to 10 business days to update our records.

confidential or sensitive information. If you cannot respond to this e-mail securely, please do not include your social security number, account number, or any other personal or financial information in the content of the email. This may be a promotional email. To discontinue receiving promotional emails from Wells Fargo Bank N.A., including Wells Fargo Home Mortgage, click here NoEmailRequest@wellsfargo.com<mailto:NoEmailRequest@wellsfargo.com;%20 Michelle.M.Gazzo@wellsfargo.com>. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. All rights reserved. Equal Housing Lender. Wells Fargo Home Mortgage-2701 Wells Fargo Way-Minneapolis, MN 55467-8000

```
$SOF$$N720 836 4252        $$FORM WFHM,1,1$$I7080219737277  ,        .00$
->$UFHA,FHA          $
708/0219737277/XP521/1/4
```

**INFORMATION ONLY**

January 30, 2017


720 836 4252
Ivr
                    00000

Wells Fargo Home Mortgage response to inquiry about paying off
the mortgage noted below. See enclosed payoff statement for reference.

                  Mortgagor:      Michael R Peters
                  Co-Mortgagor:   Tida Joann Peters
                  Property address: 297 Mesa View Drive
                                  Montgomery TX 77316
                          FHA Case number/Sec: 493-9535980/703
708 Loan number: 0219737277        Loan type: FHA

Your loan interest is calculated on a monthly basis. FHA loans originated
prior to January 21, 2015 will collect interest through the end of the
month in which we receive the payoff funds. Please note: To avoid paying
an extra month of interest, you'll want to arrange your closing so the
payoff funds reach us on or before the first business day of the month.

We may continue to make your real estate tax and property insurance
premium payments from your escrow account. If you have questions about
pending disbursements, please call us. Any amount held in escrow at
closing will be settled in accordance with the applicable federal law.

Please be sure to take care of these important items to avoid
unnecessary expense and delay:
* Planning to move. If you're planning to move, please be sure to provide
  us with your new mailing address on the enclosed Payoff Transmittal
  Form. We'll send you any remaining balance in your escrow account,
  year-end interest statements, and other documents to your new address.

* Automatic mortgage payments. Contact your provider (us, Bill Pay, a
  third party, Internet banking site, etc.) to cancel automatic payments
  at least 5 business days before your next scheduled withdrawal date.

* No need to stop payment. Don't place a stop payment on check or draft
  you've made. We'll refund any remaining balance. We may adjust the
  figures if a previously credited mortgage payment is rejected by the
  financial institution from which it is drawn.

If you are entitled to a refund on your mortgage insurance from the U.S.
Department of Housing and Urban Development (HUD), they will contact you.

If you have questions or need further assistance, please contact us at
1-866-234-8271, Monday - Friday, 6:00 a.m. to 10:00 p.m., or Saturday,
8:00 a.m. to 2:00 p.m. Central Time.

708/0219737277/XP522/2/4/0000012497085
January 30, 2017                    Page 2 - 708 Loan number 0219737277

Mortgage Payoff Statement:

720 836 4252
Ivr

**INFORMATION ONLY**

Mortgagor:       Michael R Peters
Co-Mortgagor:    Tida Joann Peters
Property address: 297 Mesa View Drive
                 Montgomery TX 77316
708 Loan number: 0219737277             Loan type: FHA

All figures are subject to final verification by the noteholder. The
TOTAL AMOUNT DUE of $ 124,970.85 is based on the payoff/closing date
of 03-01-17.

1.   TOTAL PRINCIPAL, INTEREST, AND OTHER AMOUNTS DUE UNDER NOTE/SECURITY
INSTRUMENT
Note: This Note/Security Instrument is due for payment February 01, 2017
Unpaid Principal balance                    $        123,760.18
Interest as of 03-01-17                               1,031.34
   Prorated Mortgage Insurance due to HUD               168.33
TOTAL AMOUNT DUE UNDER NOTE/SECURITY INSTRUMENT     $    124,959.85
2.   ADDITIONAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE
Recording Costs                                          11.00
Property Inspection                                        .00
Obligation Fee                                             .00
Buydown/Corp Subsidy                                       .00
Special Handling                                           .00
TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE    $       11.00
TOTAL AMOUNT DUE through 03-01-17                   $    124,970.85

```
708/0219737277/XP522/3/4/0000012497085
January 30, 2017              Page 3 - 708  Loan number 0219737277
```

Timing of loan payoff:
Total amount due is good through 03-01-17, or until any activity occurs
on the account. Funds received after that date will be subject to an
additional $ 515.67 of interest per Month. Issuance of this
statement does not suspend the contractual requirement to make payments
when due. If payments are not made, we may assess a late charge of
$ 36.09 to the loan.

We may adjust figures in this statement, if prior to the payoff date:
* We make disbursements from Restricted Escrow to pay for repairs.
* We make additional mortgage insurance premium payments.
* We make disbursements from your escrow account for items due.
* Any check/electronic withdrawal previously credited to your account
  is rejected by the financial institution from which it is drawn.

Recent escrow disbursement amounts and dates:
Real estate taxes:        $     2,527.81          12-10-10
Homeowners Insurance      $       978.00          02-17-16

Important Information:
* If you do not send sufficient funds to pay your mortgage loan in full,
  we will apply funds from your escrow account to complete the payoff.
* Interest will continue to accrue until we receive full payment.
* After payoff, we will release the lien on the property in accordance
  with state law. Direct any questions or requests about the lien
  release to: Wells Fargo Home Mortgage
  PO Box 10335, Des Moines, IA 50306

**INFORMATION ONLY**

```
708/0219737277/XP523/4/4/0000012497085
January 30, 2017                Page 4 - 708 Loan number 0219737277
```

Payoff Transmittal Form:
Please review and complete this form. We prefer that you send the funds
by wire as it is the fastest way to complete the payoff. If wire transfer
is not an option, we prefer a cashier's check or certified funds.

WHERE TO SEND PAYOFF FUNDS
By WIRE: no checks
Wells Fargo Bank, N.A.
Beneficiary Bank ABA: 121000248
Beneficiary Bank Acct: 4127400093
Beneficiary Bank Address:
1 Home Campus
Des Moines IA 50328
Special Information for Beneficiary:
Apply funds to: 708 loan 0219737277
Mortgagor: Michael R Peters
Sender's Name and Phone Number



By MAIL: including OVERNIGHT
Wells Fargo Home Mortgage
Attn: Payoffs, MAC X2302-045
1 Home Campus
Des Moines IA 50328

Important Notes:
* Funds must be received by 2:00 pm Central Time for same day processing.
* Payoffs are not posted on weekends or holidays, and interest will be
  added to the account for these days.
* All figures are subject to final verification by the noteholder.
* If you wired funds and your mailing address is changing, please write
  your new address below and fax this form to 1-866-278-1179.

Legal Notices: Texas Finance Code 343.106 requires
- the payoff statement contains closing date and date through which the
  payoff amount is valid. These requirements cannot be deleted from the
  payoff statement.
- the implementing rule to allow mortgage servicers at least 7 business
  days from the date of receipt of payoff request to respond to a
  request made under the statute.

PAYOFF COUPON: Please detach and include with payoff funds.
----------------------------------------------------------------
708 Loan number: 0219737277
                        Property address: 297 Mesa View Drive
                                          Montgomery TX 77316
Current mailing address:
Michael R Peters
Tida Joann Peters
297 Mesa View Drive
Montgomery TX 77316

Please provide your new mailing address:
Street  _____

City/State/ZIP  _____

   TOTAL PAYOFF AMOUNT: $ 124,970.85

   THIS FIGURE IS GOOD THROUGH 03-01-17 AMOUNT REMITTED _____
$EOF$